[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-11355
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 1, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-20179-CR-DLG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

OSCAR LUIS RAMOS ALARCON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(September 1, 2006)**

Before BIRCH, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

Oscar Luis Ramos Alarcon appeals his sentence, imposed after he was

convicted of importing heroin in violation of 21 U.S.C. § 963. He contends that the district court erred in denying his request for a minor role reduction, pursuant to U.S.S.G. § 3B.2 (2005). Under clear error review, we conclude that the district court did not err in refusing to apply the minor role reduction because Alarcon imported a substantial amount of heroin and he has not proven that his conduct was less significant than other participants. Thus, we AFFIRM Alarcon's sentence.

## I. BACKGROUND

A grand jury indicted Alarcon, with ten others, in an eight count indictment charging various drug trafficking offenses. The four counts that applied to Alarcon charged him with: (1) conspiring to import heroin, in violation of 21 U.S.C. § 963 (Count 1); (2) importing heroin, in violation of 21 U.S.C. § 952 (Count 4); (3) conspiring to possess with intent to distribute heroin, in violation of 21 U.S.C. § 846 (Count 5); and (4) possessing with intent to distribute cocaine, in violation of 21 U.S.C. § 841 (Count 8). The statutory mandatory minimum penalty under Count 1 was 120 months of imprisonment, and five years of supervised release. 21 U.S.C. § 960(b)(1). At a plea hearing in November 2005, Alarcon made no objections to the government's factual basis for the crime and pled guilty to Count 1, as per a written plea agreement. The court accepted his plea and adjudicated him guilty.

According to the presentence investigation report ("PSI"), as a result of wire tap interceptions in both the United States and Colombia, and surveillance in the United States, on 7 April 2004, Alarcon was approached by U.S. law enforcement agents in the lobby of a Miami, Florida, hotel, and consented to a search of his luggage. Although the agents did not find any narcotics on the scene, they took the luggage and later found over two kilograms of heroin that was well-concealed in the siding of the luggage. The agents let Alarcon go, but when he returned to Colombia he was captured, bound, and tortured by others in the conspiracy who believed he had stolen the heroin. Alarcon was eventually arrested in Colombia and extradited to the United States. Alarcon told the probation officer that he was going to be paid $15,000 for transporting the heroin to the United States.

Alarcon filed written objections to the first PSI, arguing that: (1) he should receive the benefit of the safety valve; (2) his offense level should be reduced for his minor role in the offense; and (3) he should be sentenced below the applicable advisory guideline due to the fact that he was captured, bound, and tortured when he returned to Colombia. In the Second Addendum to the PSI, the probation officer explained that due to Alarcon's objection regarding the safety valve, the PSI had been revised to give him the benefit of that provision. The probation officer also explained that a minor role adjustment was not warranted because

Alarcon was only being held responsible for the heroin he had possessed, and the officer further noted that Alarcon was more culpable than a number of his co-defendants. Finally, the probation officer noted that the government had agreed to a one level departure because Alarcon had been tortured.

The revised PSI gave Alarcon a base offense level of 32, as per U.S.S.G. § 2D1.1(c)(4). The PSI subtracted two levels because he qualified for the safety valve under U.S.S.G. § 5C1.2, as per U.S.S.G. § 2D1.1(b)(7), subtracted a further two levels because Alarcon had accepted responsibility, as per U.S.S.G. § 3E1.1(a), and subtracted one level because the government had filed a motion stating that he had assisted them, as per U.S.S.G. § 3E1.1(b). Thus, the PSI gave Alarcon a total offense level of 27. The PSI listed no prior convictions resulting in zero criminal history points and a criminal history of category I.

With an offense level of 27 and a criminal history of category I, the PSI gave Alarcon a Sentencing Guidelines range of 70 to 87 months of imprisonment and three to five years of supervised release. The PSI noted that the statutory mandatory minimum for the offense was a term of imprisonment of ten years, or 120 months, and a term of supervised release of at least five years. However, because Alarcon qualified for the safety valve at U.S.S.G. § 5C1.2 and 18 U.S.C. § 3553(f), the PSI noted that the court could disregard the statutory mandatory

minimum and sentence Alarcon according to the guidelines range.

At the sentencing hearing, neither party raised additional objections to the PSI. Both the issue of the two-level reduction through the safety valve and the issue of the one-level departure in recognition of the fact that Alarcon had been tortured were resolved without argument as the government told the court that it agreed with both.

As to the minor role adjustment, Alarcon's counsel argued that Alarcon was merely a courier, pointing out that he had no interest in the drugs, had no knowledge of the kind or quantity of the drugs in the suitcase, and that someone else had purchased his plane tickets for him. Further, he argued that the probation officer's response, that one of Alarcon's co-defendants had a more minor role, was incorrect, and described the co-defendant's activities in support of his argument, including alleging that the co-defendant had distributed almost 50 kilograms of cocaine. However, the government argued that Alarcon's counsel was incorrect about the co-defendant, alleging that he had only purchased plane tickets for couriers.

The court then suggested that they "first look at the conduct of the defendant." R4 at 14. Alarcon's counsel then confirmed that Alarcon knowingly brought more than two kilograms of heroin into the country in the suitcase. The

court noted that the amount of the drugs was only one factor, but found that "in this particular case we have a defendant traveling from a foreign country with a staggering amount of heroin . . . . [E]xtraordinary, to say the least." Id. The court also noted that while counsel had argued Alarcon was a typical courier, "frankly the typical courier doesn't have two kilos of heroin." Id. at 15. The court concluded that, "even before reaching the comparative conduct [prong]," his conduct was so substantial as to disqualify him from receiving the minor role adjustment. Id. The court did acknowledge Alarcon's counsel had made a comparative argument that was "well taken," but accepted the government's explanation that the co-defendant had not had "direct involvement . . . equal to [Alarcon's] involvement." Id.

On this basis the court found that Alarcon "had not met his burden to establish that he [was] entitled to the two-level reduction for minor role" and adopted the probation officer's analysis of the issue in the second addendum to the PSI. Id. Accordingly, the court sentenced Alarcon to 64 months of imprisonment, followed by five years of supervised release. After it imposed the sentence, Alarcon preserved his objection to the court's denial of his request for a minor role reduction.

## II. DISCUSSION

On appeal, Alarcon argues that the district court erred when it refused to give him an offense level reduction for playing only a minor role in the offense.[1] Specifically, Alarcon argues that the court focused only on the drug amount, when it should have considered additional factors, such as his: (1) lack of interest in the drugs; (2) lack of decision-making authority; (3) simple role as a courier; and (4) replaceability.

We review a district court determination regarding a mitigating role adjustment for clear error. United States v. Boyd, 291 F.3d 1274, 1277 (11th Cir. 2002) (citing United States v. De Varon, 175 F.3d 930, 937-38 (11th Cir. 1999) (en banc)). The defendant bears the burden of proof and must show his role was minimal or minor by a preponderance of the evidence. Id. "So long as the basis of the trial court's decision is supported by the record and does not involve a misapplication of a rule of law, . . . it will be rare for an appellate court to conclude

---

[1]Alarcon timely filed his notice of appeal ("NOA"). The NOA correctly identified that he was appealing his conviction and sentence, and included his correct district court case number. However, the NOA stated that Alarcon was taking his appeal "to the United States District Court of Appeals for the Southern District of Florida." R1-251. Federal Rule of Appellate Procedure 3(c) requires, inter alia, that a notice of appeal specify: (1) "the party or parties taking the appeal"; (2) the judgment or other order being appealed; and (3) "the court to which the appeal is taken." Fed. R. App. P. 3(c)(1)(A)-(C). That said, our court has "discretion to disregard irregularities in the form or procedure for filing a notice of appeal." United States v. Whitaker, 722 F.2d 1533, 1534 (11th Cir. 1984). Because this technical error has not deprived any party of fair notice of Alarcon's appeal, we have jurisdiction over this appeal. See id.

7

that the sentencing court's determination is clearly erroneous." De Varon, 175 F.3d at 945.

The Sentencing Guidelines provide for either a four-level or two-level decrease where the defendant played a "minimal" or "minor" role, respectively, in the charged offense. See U.S.S.G. § 3B1.2. A minor participant is one who is "less culpable than most other participants, but whose role could not be described as minimal." Id., comment. (n.5). To determine whether the adjustment applies, a district court "[f]irst, and most importantly, . . . must measure the defendant's role against the relevant conduct for which [he] was held accountable at sentencing; . . . in many cases this method of analysis will be dispositive. Second, the district court may also measure the defendant's role against the other participants, to the extent that they are discernable, in that relevant conduct." De Varon, 175 F.3d at 945 (emphasis added). To reiterate De Varon, the district court must apply the first principle, while it "may also" apply the second principle. Id.

Further, there is no "presumption that drug couriers are never minor or minimal participants, any more than that they are always minor or minimal." Id. at 943. "Rather . . . the district court must assess all of the facts probative of the defendant's role in [his] relevant conduct in evaluating the defendant's role in the offense." Id. Specifically, De Varon suggests that, with regard to couriers, the

8

court might consider the following factors: "amount of drugs, fair market value of drugs, amount of money to be paid to the courier, equity interest in the drugs, role in planning the criminal scheme, and role in the distribution." Id. at 945. Finally, "because the amount of drugs in a courier's possession–whether very large or very small–may be the best indication of the magnitude of the courier's participation in the criminal enterprise, we do not foreclose the possibility that amount of drugs may be dispositive–in and of itself–in the extreme case." Id. at 943.

Here, Alarcon was sentenced for conspiring to import two kilograms of heroin, and he admitted he had personally transported that amount into the country. He told the probation officer that he expected to receive $15,000 as payment, which is a strong indication that the total street value of the drugs was quite significant. Moreover, the district court noted the very large amount of heroin that Alarcon had transported, referring to it as a "staggering" and "extraordinary" amount of heroin, and observing that "the typical courier doesn't have two kilos of heroin." R4 at 15.

Further, Alarcon did not prove by a preponderance of the evidence that his role, examined comparatively, was less significant than others involved. Couriers are not necessarily minor participants in a conspiracy, and sometimes the amount of drugs the courier is carrying is the best assessment of that courier's role. De

9

Varon, 175 F.3d at 943. Moreover, the first prong of the De Varon analysis, which considers only the direct conduct implicated by the charge, is often dispositive. Id. at 945. Accordingly, the district court's decision in this case was in keeping with precedent and was not clearly erroneous.

## III. CONCLUSION

Because Alarcon imported a substantial amount of heroin and he has not proven that his conduct was less significant than other participants, we conclude that the district court did not err in refusing to apply the minor role adjustment under the Sentencing Guidelines. **AFFIRMED**.